Good morning. Are you ready to proceed, Mr. DeWitt? Yes, Your Honor. Good morning, and may it please the Court. My name is Tyler DeWitt, and I'm appearing on behalf of the appellant, Dr. Wayne Lee, in this matter. Now, Your Honor, this is a tax refund case under the reasonable cause exception to section 6651A of the tax code, where the district court granted summary judgment to the United States after they filed a 12B6 motion, which was then converted to a summary judgment motion, and applied the bright-line rule of the United States, if you boil, in some cases. Let me ask you a question, because I think we all understand boil. The question I have is, can a taxpayer like Dr. Lee do an electronic filing without being an EEO? Dr. Lee could not. Even if he used, let's say, TurboTax, right, and was kind of familiar with the do-it-yourself tax preparation software. That software is still acting in that role. It's replacing, basically, the role of Walsh, in this case, the preparer. Dr. Lee would not be able to do that. Really, an individual taxpayer is never able to be an ERO or to be an e-file provider. Because in order to be an e-file provider, an EEO, you have to have certain criteria. You have to have a particular software. You have to meet certain security standards. I mean, there's certain regulations that you have to follow. Yes, Your Honor. That falls squarely in the legal framework that Congress created, starting with Section 6011E of the tax code. Really, Rev. Proc. 2007-40 summarizes that. It's like anything in tax, right? There's a kind of short statute and then just voluminous regs. In those regulations, to become an e-file provider or an ERO, you have to apply. You go through a background and suitability check. There's an entire body of regulations on being approved. Then upon that approval, you're able to act in that capacity. It's unclear to me. I'm going to ask this of the government as well. But when you look at the tax returns that were not filed, they were prepared but not filed by the accountant, the 2014, the 2015, 2016, 2017, it looks like I'm assuming that Dr. Lee basically had a salary and then he had distributions. Because he has W-2s that are issued. Correct. Dr. Lee owns a medical practice in Tampa. He's got depreciation. He's got books. Right. But he has a salary. He pays himself. Then he has distributions. Yes. Right. In addition to the 1099, so he's filing his taxes. He's paying through the W-2s. He's also doing estimated payments, I'm assuming quarterly. Yes, Your Honor. Right. There are quarterly payments that he is making to the IRS, to the government. Yes, Your Honor. He did those for all of those years. Yes, Your Honor. Really, the heartbreak of this case factually is that he overpaid. It was this accumulating snowball that kept getting applied to the next year over and late filings under 6511, I believe is the statute. I may be wrong on that. He was disallowed the refund. It's unclear to me because I didn't see it in the record. But who made the estimated payments? Did he pay that directly? Yes, Your Honor. The accountant was not the person responsible for making those payments? No, Your Honor. He had a voucher that he would send for the quarterly payments? Your Honor, I believe he made that online, but I'm not sure. I'm not sure that's in the record. It really goes to one of the points that I want to make sure to address here is that Boyle itself, in the application of Boyle in this case, does not preclude consideration of all the reasonable cause factors. As I mentioned, this is a 12B6 motion that was converted to summary judgment motion without the opportunity for any meaningful discovery to develop facts similar to the question you asked. I guess really to put it simply, the court jumped the gun, the district court, by applying Boyle regardless of even how this court applies Boyle. Yes. I get your point that you're trying to distinguish Boyle, but the Supreme Court said that it was creating a bright line rule and it said this is its rule, quote, the failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent and such reliance is not a reasonable cause. I mean, that seems like that resolves the situation too. How does that not resolve the situation? That's a fair question. I think that at first pass, that absolutely stands out. What I would submit to the court is that that case, Boyle was decided in 1985. I'm sure you guys would agree much has changed since then. E-filing is certainly one of those areas. At the time, I'd like to point the court's attention to a quote from the court in Boyle where they state, Congress has placed the burden of prompt filing on the executor or taxpayer in that case, not on some agent or employee of the executor. Well, if you look at the form 8879, right, which is the one where, by the way, it doesn't get filed, so the tax preparer keeps it. Right. But it says, I consent to allow my intermediate service provider or electronic return originator, ERO, to send the organization's return to the IRS and to receive from the IRS an acknowledgement of receipt, B, the reason for any delay, and C, the date of the refund, if applicable. And it specifically then says what your responsibility is, is only to return the completed form 8879 EO to the ERO. The acceptable delivery methods include hand delivery, U.S. mail, private delivery service, e-mail, Internet website, and fax. And that's your only obligation at that point. And this is a government form, correct? Yes, ma'am. And we would submit that the facts are undisputed. Dr. Lee timely delivered a signed 8879 for all the tax years at issue. And that's really where it comes from. And, again, it hasn't been developed, but the government accepted all those quarterly payments. Yes, ma'am. And I'd like to point, going back to that quote from McCord and Boyle, the point is Congress changed how tax returns were filed since Boyle was decided. In 1985, the only way that a taxpayer could file their tax return was to sign the physical 1040 tax return and take it to the post office. Well, I mean, I guess, and I'm just skeptical. Certainly things have changed, but I'm skeptical that they've changed that much because in Boyle you could sign the form, give it to your accountant, and the accountant sends it in, right? Here it's you sign the form that Judge Legoro was just reading from, you give it to your accountant, your accountant sends it in. I mean, it seems like that's the same thing. What is different about the steps of filing your taxes that makes this a different case? I'm glad you asked that because that was my next point. So the steps, really, if you go back to the time in Boyle when tax returns were mailed in, they were filed that way. In every case where the Boyle rule is applied and extended and, you know, forecloses a reasonable defense argument, a reasonable cause defense, there were four parties, there were four roles, and the taxpayer was blaming their agent, which was typically the taxpayer, for not getting the return basically to the post office because the post office was, you know, there were four roles. There was the taxpayer, there was the agent, there was the post office, and then ultimately the IRS who received the return. And in Boyle and its progeny of cases, it was not reasonable to assume that the agent was going to get the return to the post office. In the age of e-filing, I would respectfully submit that the ERO or e-file provider assumes the role of the post office. They're not the agent anymore because if you think about it, there's no, you know, the post office role is obsolete in the age of e-filing. If Congress did that framework, I mean, it just logically would replace that role. Well, I mean, look, I mean, there could obviously be some federal law, statute, or regulation that says that upon submitting that form that Judge Legault was reading from to the agent, you have filed your taxes. Like that could be the law. But that's not the law, right? You have to actually, someone has to submit it to the IRS. And I guess what's the difference between me going to my accountant and saying, here's my tax forms, send them to the IRS, versus me going to my accountant and saying, here's my tax forms, email them to the IRS. I mean, it just seems like it's the same thing. Well, going back to that legal frame, right, that was created since, that Congress, you know, set out a, you know, procedure for how returns are electronically filed. And going back to those roles that the ERO, even though the tax return preparer and the ERO or e-file provider are typically the same person, that when they step into that role as an e-file provider and ERO, once that 8879 is, that completed and signed return is handed to them, they're no longer just the accountant, just the agent. I mean, in order to be an ERO, and I'm going to ask the government this because I want to understand this. But my understanding is in order to be an ERO, the government has to authorize you to be an ERO. You can't, I can't just like, you know, sign up and say I'm an ERO. I mean, there's an actual process and they actually have to get authorization from the government in order to be an ERO. Absolutely, Your Honors. You can actually be kicked out as an ERO as well through that same framework. And through those... The problem with your position is it runs counter to the, what Chief Justice Burr said to the majority of the court involved. The time has come for a rule as bright a line as can be drawn consistently in the scheme of implementing regulations. Strict filing standards. Prompt payment of taxes is imperative. Any last rigid standard of risk, courage, and a lax attitude towards filing varies. I don't see how he could have made it any clearer that you had to have a bright line rule and that you didn't want to place upon the government the burden of finding out why something wasn't filed on time. Congress intended to place upon the taxpayer an obligation to ascertain the statutory deadline and then to meet the deadline, except in a very narrow range of situations. Here's the problem. According to the IRS data, in the last tax year, 2021, there were 155 million tax returns. 90% of those were filed electronically, either by the taxpayer himself or herself, or by the ERO. So if you take a chunk of those out, the Boyle rule doesn't become a rule. It becomes an exception. And the rule is there is a bright line. I just don't see how we have the authority to draft that larger exception on what the Supreme Court said at all. Your Honor, my response to that, and I think that's a fair point, would be in that same quote at the very end of that sentence, except in a very narrow range of situations. That same court, in the majority opinion, in footnotes two and six, discusses how postal delays would be one of those narrow range of situations. It's an exception to that rule. And what we would submit to the court is that... Also, the taxpayer wasn't able, was physically unable to do so. But that's an entirely different rule from somebody just doesn't meet the deadline. They overlook it, carelessness, or intent, or whatever. And the whole purpose of the court is to keep the government from having to go in and pay that, or from tempting taxpayers not to get it filed on time and then blame the comparator. You don't need to have a meeting trial every time there's a late filing of taxes. I understood, Your Honors. And again, I would point your direction back to footnote two of that same majority opinion where postal delays, which again, it's an equivalent role. The role of the post office is identical in function to what an e-file provider and ERO does. They transmit a completed signed tax return. Dr. Lee didn't just hand his tax documents to Mr. Walsh and say, you know, hope this guy files it, which is typically the fact pattern in Boyle and his progeny. Instead, he did everything he was required to do under the e-file framework that was created by Congress, post Boyle, and at that point, Mr. Walsh was in the role, again, in the e-filing age that's equivalent to that post office role, which again, the court discusses as the postal delays exception. It's the same thing. Reading what Congress required in line with Boyle was the Supreme Court's decision, not our decision, but their decision. What he was also required to do is to make sure it was timely filed. You can do that on an ERO filed return. Your Honor, I would submit that, you know, Dr. Lee didn't have access to Mr. Walsh's electronic data. He didn't have access to his tax preparation software, you know. He didn't have to. A taxpayer has the right to contact the IRS. If it's ERO, a man doesn't send him a verification from the IRS. He has the right to contact the IRS and say, have you got my return? I think that's a fair point as well, Your Honor, and I would go back to the point earlier. But again, during all this time period, the quarterly payments, the checks that are being submitted, are being cashed by the government, correct? Absolutely, Your Honors. And again, I don't want the court to lose sight of the fact that Boyle, the bright line rule is only when reliance is standing alone. It does not preclude full consideration of the reasonable cause factors. And I would submit to the court that at a minimum, this case should be reversed and remanded for further discovery because the district court basically jumped the gun and applied Boyle without looking at the full scope and breadth of 6651A reasonable cause. In other words, Boyle looks at one fact, reliance, standing alone. But 6651A in reasonable cause looks at everything. It looks at all the facts and circumstances. And those are absolutely, you know, issues of material fact that just there was no opportunity to flesh out through discovery or otherwise in district court. Mr. Edwards, we'll let you go over your time, but we'll give you additional time for rebuttal. Thank you. Thank you. Mr. DeWitt, sorry. Good morning. May it please the court. Pooja Boysher on behalf of the United States. Counsel, let me ask you a question. Form 9325, which is the Acknowledgement and General Information for Taxpayers Who File Returns Electronically, that's a form that's prepared by the ERO and submitted when you file the electronic return. I think you're talking, Your Honor, about Form 8875, the electronic filing authorization form. No, I'm talking about Form 9325. And that form, Your Honor, is a form that taxpayers can request from their EROs or other agents for confirmation of the e-filing. The preparer can complete it, but it's at the request of taxpayers. And that's exactly what taxpayers should have done in this case, Your Honor. My friend on the other side is absolutely wrong that the taxpayer here was required to go through his ERO and e-file this return. In fact, Treasury Regulation 6011-7 says the opposite. It says even if an ERO is required to e-file returns, taxpayers are not. And even if the ERO prepares the return, taxpayers can still paper file it or e-file it on their own. But my understanding of this 9325, it says do not send a paper copy of your return to the IRS. If you do, it will delay the processing of the return. I mean, I understand what you're saying, but if you believe that your ERO has submitted an electronic filing of your return, you don't send a paper copy. Your Honor, these relevant publications actually say something different. They say, yes, your ERO can e-file the return. But, for example, if there's an e-filing issue or if, taxpayer, you just take it upon yourself to paper file that return, you can do so. IRS Publication 1345 actually foresees something like that happening. Let's talk about, if we're going to talk about publications, then let's talk about the handbook that providers of individual income tax returns do. It says here, EROs are responsible for ensuring that they submit to the IRS all paper documents required to complete the filing of returns. The ERO must provide a complete copy of the return to the taxpayer. And that they're responsible for filing the tax return once they receive the file, the other one, the 8-8. I can't remember what the number is of that one. 8-8-7-9, your Honor. 8-8-7-9, yes. I guess my question is, I'm curious what the government's position is. Let's assume that I'm a taxpayer who has filed quarterly returns. I have a small business and I am taking a salary of $150,000. Then I also, in addition to that, I take distributions. So, as a result of those distributions, I do quarterly payments. Correct? And then I ask, I resubmit the information. My accountant says, you have a refund coming. I'm like, okay, apply it to the next year. Best practices probably would have been send back $5,000 or send back a small amount so you can guarantee that the return has been processed. But that's not what happened here. And I ask my provider, the ERO, can you give me confirmation? What happens if the accountant gives me confirmation and they submit a fraudulent document to me? Because there are bad apples. What is the government's position then? If the tax return has not been filed, but the taxpayer received fraudulent information from the preparer? Your Honor, so long as a taxpayer has control over his agent, as the taxpayer here did, he is going to be responsible for the late filing of his returns. As Judge Karnes just pointed out. Even if the taxpayer asks for the Form 9325 and the tax preparer provides them with a fraudulent document showing that the return has been filed, and the government is cashing the quarterly payments, so you don't have any inclination to believe that your tax is not as accurate and up to date. Your Honor, this is what the Second Circuit dealt with in McMahon and the Fifth Circuit recently dealt with in Lindsay. In those cases, the agents not only failed to file the returns on times, they misrepresented that they actually had. And in both cases, the courts held, because the boil rule, underlying that boil rule are agency principles, that an agent is responsible, a principle is responsible for its agent's misrepresentations, we are holding the principle accountable. Now, I understand your concern. It seems to me that you're concerned that a taxpayer can potentially continue to check with his accountant and get this misinformation. I guess my concern is that it's almost like there's a complete strict liability here, which is this is not a taxpayer who hasn't paid any taxes. I mean, because there are taxpayers who don't pay any taxes, and they have a small business, and they're not paying anything, even quarterly. They're just going to get hit with a penalty for not paying, and then they're going to make their filing on April 15th. But here you have a small business owner who is making quarterly payments, and in addition to that, they're having taxes taken out of the salary that they're collecting for the small business. So it's not like they're not being diligent, and in the ordinary course of business, they're not providing taxes to the government. Your Honor, they are not being diligent, because as Judge Carnes pointed out, taxpayers have independent routes for confirming that their files were returned outside of any agency. So they could have checked on IRS.gov. They could have called the IRS. Taxpayer here didn't even ask for that form that we are discussing now. I guess my question is, why would they be required to do that when they're paying taxes? They're paying quarterly taxes, and they're having taxes taken out of the salary that they're taking for the company. Because, Your Honor. Isn't that a case? I mean, I don't remember in Boyle whether or not that individual had filed any taxes. But that's my concern. As Your Honor just noted, there are going to be taxpayers that don't do that. And that is why this bright line rule applies, because as Judge Carnes pointed out, the IRS is not going to be able to do a case-by-case analysis of which taxpayers have actually timely paid and which taxpayers have not timely paid. And in this case, taxpayer didn't do anything but sign those e-file authorization forms. Well, that's not accurate. They did more than that. They also submitted quarterly payments, and they also were paying taxes. Mr. General, you're right. We don't actually have in the record how those payments were paid. I take my friend's answer that the taxpayer actually did that himself. But if he's paying on his own, and if subsequent to the IRS notifying him that you have not e-filed your returns on time, he then files them with the IRS himself, at all times he maintained control over his returns and his payments and should have and couldn't have filed these on time. If he was actually interested in making sure that the credits had been carried over, he would have checked. He would have checked online. He didn't do anything. And by the way, I think there was also a misunderstanding about whether or not the returns here were even prepared. The agent never even got to that point here. There was no preparation, because as page 42 of the record demonstrates, the agent said the tax preparation software at Atrox Partners couldn't handle taxpayers' returns. They weren't even prepared. He never even got to the e-filing step. One other thing I think is important to clear up. My friend really likes to rely on this analogy of paper file returns. Is your position then that the tax returns that eventually got filed had never been submitted to Dr. Lee prior to that? Because in order for him to sign the document to e-file, you're supposed to look at your tax return and confirm that that is accurate, the information is accurate. So are you suggesting that the accountant never gave him any tax returns? Your Honor, that's what page 42 of the appendix shows, and that's the amended complaint document 7 in the district court's record. Page number of document 7, if you would like. It's page 4 of 7, paragraph 12. Mr. Walsh acknowledged in a letter, I'm sorry, that, yes, that he was incapable of preparing Dr. Lee's tax return for each of the years at issue because the return was so complicated that Atrox's tax return preparation software was incapable of handling it. So I don't know if at the point that Dr. Lee was notified, if he'd actually even seen the returns before. From this fact, it seems to me that he hadn't, but when he finally was told that the returns weren't filed, he signed paper returns and he handed them to the IRS. And that's what taxpayers should do. If either they're dealing with an agency that has presented information to them or they have issues with e-filing, with electronic filing, there are these alternate means. And so long as we have a system where paper filing is still an option. Yeah. And also, I mean, so there's a lawsuit filed against the accountant, right? Yes, ma'am. And so the question to me, and just tell me if I'm wrong, the question to me in this case is who is responsible for this? Who should bear the cost of this? Should the IRS bear the cost of this by forfeiting the penalties that it could otherwise assess, or should the agent bear the cost of this because the agent is the one who's responsible and the agent is responsible to its principal and the principal can sue the agent and make the agent bear the cost? If we rule for the opposing side, we're putting the cost of this on the IRS, right? Yes, Your Honor. And in McMahon, the Second Circuit said exactly that, that the issue of an agent's failures is a state law issue between a taxpayer and his agent. And in fact, Mr. Lee has already brought a suit and settled. My friend used the word heartbreak earlier. If there's any heartbreak here, it's that taxpayer has already recovered money from his agent for his wrongdoing. Can I ask you a question about that? So these EROs are heavily regulated by the IRS. Do I understand that correctly? You have to go through some kind of, I don't know, what do you have to do to become an ERO? Your Honor, I'm not sure how heavily regulated it is. I know that there's a process for getting that e-filing status. And Judge Lagoa noted that with my friend. But to be an ERO means as a specified return preparer, or specified return preparers have that responsibility to e-file, but only specified return preparers have that responsibility to e-file. Everyone else can file by paper. And in fact, return preparers who are not specified return preparers can file on paper. It was the taxpayer's choice to use the specified return preparer. It was the taxpayer's choice to make that specified return preparer his ERO. That's actually not accurate because my understanding is that the regulations, if you're an accountant and you are submitting more than 10 returns, then you must be an ERO. That may be right, Your Honor. But my point is if the ERO has to file. I understand. But, you know, most small businesses are going to use an accountant. And if you're going to say that an accountant can only have nine clients so that you can then do paper filing, that's sort of ridiculous, don't you think? Because at the end of the day, the government has imposed on accountants that if you have more than 10 submissions, if you prepare more than 10 returns, you must file electronically. Yes, Your Honor. And my point isn't that taxpayers who use specified tax return preparers should always Dr. Lee could not tell this accounting firm that he wanted his things done by paper. Yes, he could, Your Honor. That form that we discussed earlier, form 9325, or not 9325, there is a document where taxpayers can say, even though you have prepared my return, I would like to paper file it. And that's in the regulations. And Treasury Regulation 6011-7, which actually created this rule that specified tax return preparers must e-file, specifically says, and I'm reading, it's a quote, the rules contained in this section do not alter or affect the taxpayer's obligation to file returns under any other provision of law. So even the e-file regulation that was created for specified tax return preparers said this has nothing to do with the taxpayer's individual obligation to confirm that his returns were filed. Can I ask a question about the – do you go back to my question about whether this person is regulated or not? So it sounds like the accountant that failed here is a bad accountant and should not be accounting anymore. Is that just up to state authorities to determine, or is there some IRS mechanism for saying, look, we've learned that you are not filing tax returns, we're going to disallow you now from being an ERO or something like that? Is there anything that the IRS can do to that person? My understanding, Your Honor, is that these are state law, agency law issues. I'm not sure if the IRS is specifically going after those return preparers that don't e-file but have said that they've e-filed. Well, you would lose your PIN or your electronic filing identification PIN number. I mean, EROs are sanctioned if they don't comply with some of the regulations. Your Honor, I take your word for that. I believe that that would be the case, yes, because they are held to a standard of having to file these returns. And in briefing, my friend used that to demonstrate that there was a responsibility to the IRS on behalf of the EROs. But, no, that responsibility, that duty for EROs to e-file, goes back to their responsibility to the taxpayers, which, again, is an issue between taxpayer and agent under state law. Even if Boyle didn't apply and didn't dictate the outcome here, Your Honors, taxpayer has done nothing to demonstrate reasonable cause in this case. He didn't check online whether his returns were e-filed. He didn't call the IRS. He didn't ask for any confirmation from his agent. The first time taxpayer was aware that his returns had not been filed was when the IRS cost him in 2018. Well, he did allege in his complaint that he had asked the accountant to do a change of address for him, and the accountant did not do that. And as a result of that, he obviously didn't get any paperwork from the IRS. Your Honor, I believe, and this is fleshed out through Appellant's Brief on Appeal, that the point at which he asked for that address change was when he was filing his returns, because there is a mechanism for changing address in the returns themselves. And so this all goes back to the timeliness of the returns. It's not some separate form that he had asked his agent to file here. Because Boyle, the Supreme Court in Boyle, was concerned with clear deadlines and the clear duties on taxpayers to meet those deadlines, Boyle applies here. It would be incongruent to say that on paper file returns, taxpayers must meet strict deadlines. Can I ask you a question? What if, this is a hypothetical, so let's assume that you have a taxpayer who makes a certain amount of money, let's say $150,000, and they do quarterly payments, and they pay all the taxes that would be due for the $150,000, but you have a bad apple, an accountant, who doesn't do the e-filing, would they still be assessed a late penalty? Yes, Your Honor. Because as Boyle demonstrates, we need to have strict deadlines for our self-reporting tax system to work. And whenever a taxpayer doesn't… What would be the basis for the late penalty? What would be the basis for the penalty if they had complied with and they only had $150,000 income and they had satisfied the tax payment that was due, just the fact that they hadn't filed by April 15th? Yes, because there are two separate types of penalties. There's one for late filing of the return and one for late payment of the tax owed. Okay. We think that the district court got it right, and if the court doesn't have any other questions, we ask that the court affirm. Thank you. Thank you, Your Honor. Mr. DeWitt, you have three minutes remaining for rebuttal. Mr. DeWitt, let me ask you a question. You touched on the issue of wage arguments, and that is the settle between the taxpayer and the ERO repair. What happens if you win this case? With respect to the settlement? Does Ms. Boyd get to keep the money from the settlement? I'm not sure what the terms would be under that. I don't believe that's even in the record, other than that there was a settlement. General, I don't… Well, that wouldn't be just improper for him to get compensation for the money that he lost as a result of the ERA's negligence of intentional failure to file, and then he'd be refunded on that money.  that Dr. Lee overpaid the IRS $369,996.84 because of the disallowed carryover estimated tax credit because these returns weren't timely filed, of course, through the actions of Mr. Walsh as an ERO and an e-file participant, and that you had mentioned, Judge Bradshaw, about who should bear those costs. Well, Dr. Lee already paid it. Counsel, you go way far afield. I assume that any damages that your client, Mr. Lee, suffered were included in the lawsuit and factored into the settlement directly or indirectly. My question is, it really wouldn't be appropriate for us to set aside the bright line rule and with the result that your client gets double pay, would it? I suppose, in some instance, hypothetically, again, I don't think that's in the record. I don't have those provisions or able to articulate what the terms of that would be. Counsel, I know you don't have the provisions of the settlement, but the district court could get the provisions of the settlement and the terms of the settlement and the amount of money that passed in the settlement if it were necessary to prevent an unjust ruling in this case. So, what should be done about that? How do we know that Mr. Lee is not saying, that's great, I got 90% of my money back from the accountant. The damages I've suffered, now I'm going to get 100%. 190% is a pretty good return. Your Honors, I would submit that, you know, that's a matter to be addressed in state court. You know, if the state decided to award damages, knowing that this was a potential cause of action at the federal level, that that would be. But wouldn't it be like, I mean, assuming if we reverse this, wouldn't it just be a set off in federal court? Potentially, Your Honors. Excuse me, when I hear the word potentially, I know what that means is, assume one way in this court, get me off the hook now, and when I get back to state court, I'm going to potentially argue with the other one. I mean, take a position. Is there a set off or not? I don't believe there is here, Your Honors, because, again, when you look at the facts here that are undisputed, Dr. Lee overpaid because of these late filed returns. He missed the three-year statute of limitations for those credits to apply. He overpaid the IRS $369,000, and that's not penalties. The penalty amount is about $78,000. And so, you know, if you look at who's bearing these costs, and again, we don't have the exact dollar figures, and I would submit that at the state level, yeah, that's where the set off would be the appropriate forum. Yeah, I mean, I think your answer is correct. There would not be a set off as between you and the IRS. The set off would be between you and the accountant, and doesn't the rule you're advocating for ultimately let the accountant off the hook because the accountant committed professional negligence here. He should pay his client for the damages that he caused, but instead, the IRS is going to give you the money back, and the accountant gets off the hook. Isn't that ultimately, at the end of the day, what your rule would allow for? I think so, Your Honor. I think that's how it would play out, but I do want to... Can I ask a question? As a result of the fact that these filings were not made, so the last tax return would have been 2017 that wasn't filed, correct? Correct. So when you do quarterly payments, you have to pay 90% of what you made the year before. Yes. So did that increase or decrease the amount that he owed in 2018? In 2018, there was no more carry forward. No. The 2018 liability was unaffected. Okay. Because there's 6511. I think that's the statute. This is the three-year statute of limitations on a claim for refund, which is how, technically, the tax code treats estimated tax payments that are overpaid that are carried over, and that's the tragedy of this case. And I do want to just distinguish one thing real quick. The court's mentioned changing the rule, affecting the rule. I would submit that we're not changing the bright-line rule of Boyle at all. It's really just a narrow application of it to these facts, which are unique, by the way. No other court in America has involved circumstances with these types of facts where you had a completed and signed tax return that was delivered timely to an ERO through the 8879 signature form that was never transmitted. And, again, we would argue that is equivalent to a postal delay. That's an equivalent situation that was contemplated at the time of Boyle, just not the new framework that we have with e-filing. It's a similar function. Between this and the postal delay, the taxpayer could have inquired and found what had happened before all these interests and penalties stacked up. Whereas if there's a postal delay, you don't find out about it until it's too late. I would have two answers to that. First, the government's argued that, you know, Dr. Lee should have, you know, that he had the opportunity. He could have mailed the return in himself. And I just want to real quick address that if we take that to its logical ends, that seems to really defy the entire purpose of Congress creating the framework for e-filing. If they're going to have an entire system and a body of regulations and the EROs and all this, why in the world would they require the taxpayer to mail it in just in case? Well, I mean, I would never let my accountant now e-file for me. Well, I certainly would. Take it to a post office. I understand, you know, and it's one of those things where, you know, there's a different type of reliance in Boyle that is not what happened factually in this case. And that's simply put just where, you know, the distinction lies. It's not asking this court to determine that Boyle does not apply to e-filed returns. I think that's obviously beyond what we're asking here. But I would submit that, again, this case is factually distinct. It's got unique facts that are just not the same as the broad reliance that the taxpayers in Boyle and its progeny cases, you know, were those fact patterns involved where they just said, here's my documents, hope you get it filed. Which, by the way, none of those cases involved a completed tax return that was signed with 8879 that was timely delivered to the ERO and then never transmitted. And just to confirm, your client did receive the 8879 form from the accountant to sign electronic signature. Your client then sent it back to them. This is all, like, encrypted because it's all supposed to be secure. Yes, Your Honor. And then the accountant was supposed to file it at that point. Yes, Your Honor. And going back to the fact that the returns weren't prepared, you know, obviously, Mr. Walsh, the truth is kind of a moving target for him. But if you look further in the complaint, Mr. Walsh gave the completed copies of the tax returns to the revenue officer when she showed up in 2000, I believe in 18, and prepared the returns. I mean, you know, again, the 8879 was signed and delivered. As you had mentioned, that's all covered in the complaint in the record and undisputed here. And really circling back to the point I made earlier that regardless of how this court does apply, Boyle, you know, I know obviously we spent a lot of time talking about that. You can say the case really just boils down to that. But looking outside of that, again, that bright line rule stands for the proposition that reliance on an agent standing alone is not a reasonable cause and that at a minimum, there's been no, the court has several hypotheticals that I think allude to some of the fact finding that needs to happen here through discovery. We're too early in the process even to determine under the broader context of 6651A, the reasonable cause exception, whether Dr. Lee's actions, all of his actions, were reasonable. Thank you both. It was a very interesting argument and we appreciate both of the briefs that were filed in this case and the arguments today. Thank you. Thank you.